Case No. 251054, Hugo Benevides, submitted on briefs. And 251356, United States of America v. Srecko Walker, oral argument, not to exceed 15 minutes per side, Ms. Selina, supervising attorney for the appellate. Thank you. Good morning. May it please the court, thank you again for allowing law students to represent Mr. Walker under my supervision. I'd like to introduce Catherine Cleary and Sophia Poe. Thank you. Thank you. Welcome. And how are we dividing the arguments between the two? Good morning. My name is Sophia Poe. I will be doing the Fourth Amendment issue, and my colleague Catherine Cleary will be doing the proffer agreements. Very well. And you have seven minutes for rebuttal? We'd like to reserve two minutes for rebuttal. Two minutes. Oh, okay. Very well. Thank you. May it proceed. Thank you. The affidavit to search 1325 Wagner Ave. was so lacking in probable cause that no reasonable law enforcement officer could rely on it in good faith. This affidavit does not come close to establishing a nexus between drug trafficking and 1325 Wagner. I will first discuss why we win under the nexus conception of these cases and then discuss why we win under the known drug dealer line of cases as well. First, the underlying assumption behind the nexus requirement is that when there is enough of a connection between drug trafficking and a home, we can infer, obviously, that evidence of drug trafficking will be found in the home. But that is not the case here. This affidavit alleges a single drug deal with a 2.5 gram quantity that happened away from the residence. The affidavit does not place Mr. Walker inside the home at any point in time. The affidavit fails to allege that Mr. Walker lives at the home and does not sufficiently connect drug trafficking to the home in any way. Well, maybe it did not connect him to the inside of the home, but didn't the warrant connect him to the premises of being on the premises, leaving the premises, coming back to the premises? No, Your Honor. The warrant references that the affiant is aware of electronic surveillance of the car from the area near the home to the drug transaction. That's when the affiant has eyes on Mr. Walker, is at the transaction. And then there's nothing on the back end. There's no surveillance of Mr. Walker back to the home. Well, there's not surveillance, but isn't the tracking, doesn't the tracking bring him back to the house? No, that's not in the affidavit. There's nothing about tracking Mr. Walker back. All they have is they have tracking leaving the home, doing it, okay, but not returning. Yes, and I would also push back on that because the tracking leaving the home doesn't place him from inside the home to the drug deal, which this court has frequently recognized in cases as an important fact in this area of case law because we're... Wasn't the car in the driveway of the home? At a later point in the day. A later point in the day when he loads a child into the car seat in the back, and it's his girlfriend's house, so... So, first, Your Honor, it is at a later unspecified time in the day. He is seen in the driveway of the home, like you said, with a child. And he puts the child in the Jeep that was the same Jeep that left the area of the residence and went, and there was a drug transaction. Yes, Your Honor, but I'd also like to point out that... So, then the car is back at, I mean, you say he doesn't come back to the home, but the Jeep got to the home, and then he loads the child, so I... Eventually, we don't know what time this observation happens later. It just says later in the day. Eventually, it got back to the home, but this is... And this isn't just splitting hairs. This is an important fact because this is what we're basing that inference on, that evidence of drug trafficking would be at the home because of a... There, you know, a before and after travel from a drug deal. The whole reason that that's important and that we can make that inference is because of the inference that evidence of drug trafficking would be in the home. So, this court, in numerous cases, in Grant, even in Ellison and White, has taken care to emphasize that the target was seen entering the home, going to the drug transaction, coming back to the home, and going back inside the home. Okay, am I wrong, or did the affidavit specify two instances where he left the premises? The first one, I think you're correct, that he drove from the house to the Meyers store and sold $150 worth of cocaine. Then, the same day, Walker entered his vehicle at the Wagner home, drove to a gas station, met an individual for 30 seconds, and returned to the Wagner house. Am I correct on that? Yes, that's correct. So, there's two instances. But, the second instance, there is no indication of what that was. This court has never recognized that... Well, it does look rather suspicious, doesn't it? But, this court has never recognized that that's enough for an access to a home. In fact, in all of this court's cases where we track a dealer from a home to a drug transaction back to the home, those drug transactions are actually done with confidential informants. That's another layer we're missing in this case. It would be stronger evidence, that's all. We're just trying to determine whether there is a sufficient nexus to the premises. Correct. I kind of agree with the district judge that this is weak. Correct. Judge Gerbold, she actually said that it's a fairly thin affidavit here, and I tend to agree with her. Yes, I believe it was Judge Neff at the hearing. But, yes, Your Honor, and this all has to be understood also in the context of the 2.5 gram trafficking and the fact that all of these observations were happening on... This is just one day of observations that are in this affidavit. This is not like many of these courts' cases where there's long-term surveillance. They know this person. They have a tip from an informant. They know this person. Lots of varieties and flavors. Can I ask you about the departure point? So your point was that unless the government witnesses the individual walk out the front door or some door of the home, that's not, on the departure point, that's not enough to link them to the home? No, Your Honor. Well, you agree that he was there and the car was there? Yes, yes. So the only thing we don't know is that he walked out the front door to get to the car. Well, the problem... My argument is that the problem with that is because of all the... That is an inference we're making on top of all the other inferences we have to make in this case to connect the dealing to the home. That's one of the weaker... You'd say that's one of your many strong arguments. That's just the least strong. Maybe in a different case where the facts were different, you know, that could be stronger, but that's just not what we have here. We have no, you know, continuous ongoing surveillance. We don't have... This is one day of observations. He's never connected into the home. It's only 2.5 grams, which, you know, can fit in your pocket. This is... I thought your best argument was that the car doesn't return. I think he leaves from the home maybe at that exact moment. After that transaction, the car doesn't go back right then. I thought that was your strongest fact. Would you agree with that?  And this court has... You agree with that? Do you think that's your best... Like, if we're going to focus on one thing, do you think that was the most important thing? I mean, under Sanders, which obviously clarifies that before and after travel to a drug deal means there's a nexus to the home, I would argue that's our best point if we're thinking about it through that case. But I think the small quantity is also really important because it's, you know, the assumption that evidence of drug trafficking will be in the home hasn't been based on such a small quantity as well. The affidavit's thin. It's a close case. Why doesn't Leon, good faith, accept it? So this is a situation where, you know, probable cause is so lacking that we don't want officers relying on enforcement. We don't want them to? I mean, don't we look at what a reasonable officer would do here? Correct. Rather than what we want? Yeah, we look at what a reasonable officer would do, but the key there is it's an objective reasonableness determination. So you say that this is so lacking in probable cause that a reasonable officer would know that it's an invalid affidavit, even though they're not a lawyer. I mean, we're arguing the point here. How do we expect officers to second guess it better than we do? Well, based on this course's case law, this is a bridge too far. There are not cases where this many inferences are required. We require this many inferences on top of each other, which, you know, of course is forbidden in the Lawton case, to get to a point where we see probable cause. I mean, it's unreasonable that an officer can have to make this many inferences to connect the nexus. What's the best case you've got for that? The best case for not applying good faith is Grant, Your Honor. You know, this is a case where this court has declined to apply the good faith exception, and it was mentioned in Sanders as well. I'll take a look at it. You're out of time. You could use your rebuttal now. No, Your Honor. Thank you so much. Are there any further questions at this point? Thank you. Thank you. Good morning. Good morning. Good morning, Your Honors. May it please the Court. During plea negotiations, Mr. Walker entered into a conditional agreement which allowed the admission of his proffered statements only if he first offered evidence or arguments materially inconsistent with the proffered information. Following a routine opening statement in which Mr. Walker simply challenged the sufficiency of the government's evidence against him, the district court admitted troves of the most prejudicial evidence in this case in violation of recent controlling precedent from this circuit and the express terms of Mr. Walker's proffer agreement. Permitting the government to use proffered statements in violation of the agreement's express terms not only deprived Mr. Walker of a fair trial, but also undermines the trust between prosecutors and criminal defendants that is necessary to sustain the plea bargaining process in general. I'm just a little confused about why your client didn't waive this claim. Sure. I mean, there was a long colloquy between the district court and counsel. Counsel said we're aware of the problem. There was a colloquy between the district court and the client himself. So, yeah. So as this court has made clear in Walker v. United States, waiver requires the intentional relinquishment of a known right. In other cases, it's been described as a plain positive concurrence that is required. And a couple of counsel's statements during this discussion with the district court I think do save this from being a waiver. And that's where he stated there are plenty of sections of the proffer agreement that have nothing to do with the opening statement and indicated that because he did not know which statements the government intended to introduce that he would have to object on a case-by-case basis. And so that suggests to the district court that there is a problem here and that counsel is going to object on a case-by-case basis as the government offers these statements. Okay. So then, but counsel doesn't object. So, at best, you're in plain error territory? That's correct, Your Honor. I think we would say that counsel's later failure to object just is, you know, silence. And as this court has always said, silence is just indicative of forfeiture rather than waiver. And so we would ask that the court review the issue for plain error. And we do believe that it meets that plain error prong, specifically because of the court's recent decision in United States v. Bergen. Can you just help me just understand how this process works? In other words, you used the word plea bargaining. The proffer was offered as part of a plea bargaining process. I don't, but as a proffer, you kind of admit to the crime, more or less. You confess all the facts. And then you're saying that, you know, at trial, you can't offer anything that's materially contrary. But at trial, everything you're going to offer is materially contrary. I mean, you admit, I mean, essentially admit to the crime, the proffer. At trial, if you go to trial, you're going to say, I didn't commit the crime. How do you harmonize those two things? I have the same question for the government. I don't understand how, after a proffer, you could ever actually sort of put on much of a defense. Maybe it's you don't testify. Maybe it's, like, you affirmatively can't put on contrary evidence. But, like, everything the government is going to present is consistent, probably, with what you said in the proffer. And if you want to oppose that, it's going to be materially contrary. Sure. And I think this is something that the Second Circuit kind of addressed in the Roseman case, which is that arguably, like you said, any evidence or statement or whatever is going to be, to some extent, inconsistent because the defendant has essentially already admitted to the crime. But that's not a result that the court wants to impose. Defendants enter into these proffer agreements and proffer information because they think they might be able to get a plea bargain. Yeah, very valuable. Yeah, and if that doesn't happen, they still have the understanding that they're going to be able to proceed to trial and make out some sort of a defense at trial. Maybe it's not the same defense they would have made to be able to make earlier, but they still are able to make out some defense. I mean, they've given up a lot. Maybe there is no other defense. I don't know. Maybe there is some other. Well, I mean, there could be defenses. There could be Fourth Amendment defenses. There could be Fifth Amendment defenses. Sure. There could be legal defenses. They admit to the facts in the proffer, and those facts, if they testify at trial, are inconsistent with the facts they've admitted, then it comes in. So I think it's the factual basis. Yeah, for sure. And so also, like this Roseman case, the Second Circuit, this was a case that was excited extensively in Grogan. They specifically said that challenging the sufficiency of the government's evidence against the defendant, even on a particular element of the crime charge, is not sufficient. Sure. I think that's a legal defense, that I admit to these facts, but whether those facts are sufficient to convict you, I think, is illegal. I don't think he's admitted that. He's just admitted the factual basis. Exactly, and that's all that counsel's opening statement did. He simply . . . Okay, so that's why he didn't go . . . he didn't violate it. Exactly. He did not violate the proffer agreement. He only said the evidence is not going to show that Mr. Walker was involved in . . . Okay. All right. I kind of agree with Judge Larson. I think you've got a waiver argument. Maybe it's forfeiture, but why is this plain error? Yeah, absolutely. So the court in Grogan, when they announced this rule, and the Second Circuit rule as well, it's based on a recognition that a defendant should be able to go to trial and make out sufficiency of the evidence argument without opening the door to all of these statements coming in. And like I said before, it's hard to imagine that a defendant would be able to really make any opening statement or proceed to trial at all if this was not the rule. And so, you know, there's a fairness concern there. Just for one reason, because the defendant, you know, after opening statements where he did just challenge the sufficiency of the evidence, the government was permitted to introduce all of his proffered statements. But also because of the plea bargaining process more generally and the fairness that's needed, the trust between prosecutors and criminal defendants, this is a big problem of process breakdown, if you will, allowing this sort of error to occur. I guess I'm asking, what's the best case or best authority that this is plain error? What happened here? So I don't think that there is, you know, a situation, at least from the circuit, where this was up on plain error review. However, in the Grogan case, the court did recognize that the error of admitting these statements violated the defendant's substantial rights. Even where there was, you know, significant other evidence implicating the defendant in the charged crime because of the fact that the jury was likely to be substantially swayed by the defendant's implication of himself in this crime. And the government in this case argued extensively, listen to what Mr. Walker himself has said here. And we know that it was important to the jury because they asked for this proffer agreement during their deliberations. It's very, very prejudicial evidence to have a defendant implicating himself in the trial. And the government relied on these statements extensively. All right. Very well. All right. Thank you. Good morning. Good morning. And may it please the court, my name is Austin Hicks and I represent the government here. You can't tell the district court that you're comfortable and then show up in this court and say that your rights have been violated. But that is what Mr. Walker is doing on two of the four issues he's raised on appeal here. And I say the word comfortable because that's the exact word that Mr. Walker chose when he was speaking with Chief Judge Jarboe after being placed under oath, contemplating a remedy to this problem of a witness not yet being cross-examined. The government was very careful to ensure that Mr. Walker was the person who was directing the outcome of what would happen next after this problem arose at trial. The witness who testified then didn't show up again? Yes. The other side didn't argue that this morning, did they? It's in their briefs. I know. But they didn't argue it this morning. So I'm happy to move on. Well, you can argue it. Go ahead. I would like to hear your argument on it because I'm interested as the issue, and they'll probably raise it in rebuttal now. Thank you, Your Honor. So we had a witness of Mr. Razick who got visibly nauseated and had to leave the courtroom mid-testimony and was so ill that he couldn't resume his testimony. I continued to call. I represented the government during this trial as well, and so I just called my remaining witnesses and proceeded on with the trial. And we got to the point where we now had to decide what's going to happen next. When the trial judge turned to me and said, you know, essentially, hey, government, what are we going to do now, I was very careful to ensure that the government did not push whatever happened next one way or the other. I specifically told the court, since the prejudice here, if any, would accrue to the defendant, I'll defer to defense counsel as defense preferences as to how to handle the situation going forward. And it was then that Mr. Walker's trial counsel rose up and said, what we'd like, Your Honor, is a curative instruction. When he explained why, Mr. Walker was then placed under an oath. He had an exchange with the district court judge, and after the judge had explained how this would work, I'm going to give him a curative instruction saying you are not to consider Mr. Razick's testimony in any matter. You must completely disregard it. He said, I'm comfortable with that. If that's not a waiver, I don't know what is. This is very measured, deliberate consideration. Mr. Walker waived his right there. How about the proffer evidence? Maybe that's why they didn't argue this point this morning, because it wasn't their strongest. So that's a waiver as well. The proffer waiver is just as strong, Your Honor. So, first, this was not a process breakdown. The government had been very careful about making sure that if Mr. Walker opened the door to his proffered statements, he did so knowingly after a lot of consideration. The first step in that process is making sure that he doesn't enter into a proffer agreement without the benefit of counsel. This is a very grown-up decision about if you're accused of a crime, whether you want to come and meet with the government and then make all sorts of statements about what you did and didn't do. And as the Court has already mentioned today, this does often put defendants in the tough spot of reducing their latitude that they have if they do proceed to trial. But to borrow the Court's words, that's a feature and not a bug. The point of a proffer agreement is to make sure that both parties are narrowing down the scope of what options are on the table going forward in a case. What options is the government giving up in that context? In other words, I understand, you know, plea bargaining is very important, right? It's a critical part of the system, and I understand the defendant coming in and trying to work out a bargain. This is part of it. But plea bargains don't always work out. So they're giving up a lot. Is the government giving up anything in this context? The government is giving up something, primarily time, which I understand that that pales in comparison to someone's constitutional rights. I understand that. Time to sit down with the defendant and talk to them? So arranging a proffer, getting the agents there to ask the questions, it requires a lot of investigative effort to prepare for a proffer because the agents have to know exactly which questions they're going to ask. The prosecutor has to be aware of what statements may or may not be truthful and really go into a proffer learning the case. So it takes a significant amount of time. Yes, you'd have to invest that time if you were going to go to trial. And that's exactly my point, Your Honor. You just get a little preview. Well, but the time is not spent on getting ready for trial insofar as you're not marshaling your witnesses, you're not preparing the other exhibits. I agree that it is, again, not as significant as what the defendant is doing. It doesn't limit any argument you're going to make at trial in any way. Not for the government, Your Honor. Right. It dramatically does for the defendants. And I just try to get this attention to me. We need this. I think we want to encourage plea bargains. I think if a proffer is an appropriate part of that, maybe that helps you prosecute other people. There's value to that. But really, at least the way this agreement was written, I don't know if this is how they're always written, but it really feels like it puts the defendant in a tough spot if they want to go to trial at that point. It does put the defendant in a tough spot. Doesn't the government have so much leverage at that point? I think the government does. But, again, it's not a process breakdown because most defendants don't enter into these agreements. They only do so with the benefit of counsel. And then we flag this potential issue. I don't know if you know why this case didn't end up plea bargaining or if you can even tell us, but it didn't end up settling in a sense. I don't know. In civil cases, mediation, it's all confidential. Nothing comes in. I don't think there's any really prejudice to anyone. You're supposed to do it all off the record. It's totally different here. It was certainly a surprise to me, Your Honor, that the case got back on the trial track after the proffer interview is completed, but I don't know what was in Mr. Walker's mind and what made him change posture there. But to my point about this not being a process breakdown, so at the final pretrial conference, which takes place weeks before a trial occurs, we flagged this issue for the district court and said we want to make sure that we don't get into the proffer unless the court has given us clear permission to do so, saying that the agreement's been pierced. And then at trial, after opening statement, we asked for a hearing outside the presence of the jury just to see whether we had permission to go into this. And the reason was because the very first witness in the trial was a task force officer, Rene Garza, who had testimony that was germane to other issues in the case, but he was also one of the agents who was present at the proffer interview. And so the government needed to know right away, are we allowed to ask the proffer questions after we go through the bulk of his testimony, which was the reason for the recess there. Was there any defense left available to the defendant here? Assuming they can't say anything inconsistent with the proffer, was there any defense left for them? I think so. Well, I mean, so many defendants, they kind of do the put-the-government-on-trial defense of, hey, there was a rogue investigator, he's the one who was planning it. I mean, they could do that. They don't have a rogue investigator. I mean, hopefully not in every case there's a rogue investigator. So hopefully that's the exception, not the rule. And to be clear, there was not one in this case. So what defense does this defendant have or do defendants generally have? It may not be dispositive of the case. It's just an odd feature in my mind. I understand, Your Honor. And when I say there is a defense available, I don't mean that that's necessarily one that's always available. They didn't do it. I guess the defense is they didn't do it and the government has to prove they did it. That's right. They can't really counter the evidence that they didn't do it with a different interpretation. You know, say something in a proffer that could be presented in a different way. I mean, I realize you can't suborn perjury and the lawyer can't put on, like, false testimony, he knows it's false. That's right, Your Honor. And the defense counsel here did more than just say the government has insufficient evidence. And that was in introducing this idea of a buyer-seller relationship. So defense did mention that in opening statement. There are only so many ways to defend a drug conspiracy, and one of them is this buyer-seller relationship that this Court has opined upon in multiple opinions. A buyer-seller relationship is a defense to a conspiracy. Until the defense makes their opening argument, you know, we the government didn't know what counter story are they going to try to run, but as soon as we hear the words buyer-seller, okay, we know this is about to be a buyer-seller trial. Was Mr. Walker just somebody who was a one-time or occasional purchaser of cocaine, or was he actually making an agreement with other people to distribute controlled substances? So that was the alert moment of, like, okay, now we know that is actually materially inconsistent with what Mr. Walker said in his proffer, because he represented in his proffer, absolutely, I was partnering with Stephen Rizk. He identified his source of supply in Mexico. Very detailed description of his conspiratorial activities. And I would love to have a more developed record for this Court on why the opening statement was inconsistent with the proffer, but the reason I don't is because of Mr. Walker himself. The defense counsel conceded, yes, there are portions of my opening statement that are inconsistent with the proffer agreement. That is in the record. At that point, there is no reason for myself and defense counsel to have a reasonable debate in front of the district court about whether it's been pierced. Defense counsel just conceded, yes, this is inconsistent with the terms of the proffer agreement. And that concession decides the issue here. Well, he didn't entirely concede it. He said there are parts of my parts that are inconsistent, and I reserve the right to object later. So why is it a waiver as opposed to a forfeiture, an unraised? Because the district court asked, I'm not hearing an objection that this is improper in any way. The defense counsel agreed, yes, Your Honor. So if they're relevant and relate to this argument that you're making, it's not a conspiracy, but it's a buyer-seller relationship, don't you agree that they'd also be relevant to come in? The defense counsel answered, I would have to agree with that. It's an affirmative agreement with the fact that at least the portions of the proffer agreement that are germane to the topic of concern. Go to buyer-seller, yeah. Do you think you lose if we just assume the plain error? I mean, the best they can do on this is plain error. No, we would win under plain error as well, Your Honor. But I think that this is a clear instance of waiver, and that means that the court can't even reach the merits of the issue. That was the court's guidance is that waiver forecloses appeal, can't reach the merits of the issue. And that's an important rule to enforce because it encourages litigants below, when there is a problem, to identify that as a problem and to develop the record so that the court has more to go on. If the court were to engage in plain error review here instead of waiver, they would sort of be tolerating exactly the problem that the waiver doctrine is supposed to prevent because that happened here. We didn't develop the record further on this point because there was an agreement, hey, there are portions of the proffer agreement that are inconsistent here. I'm happy to talk about this further, but I do want to touch on the search warrant briefly since there were some questions there as well. So the question I was asking your friend on the other side, so a lot of these cases we do see the defendant leave the home residence place and then come back. Would you agree that there's not evidence that the defendant would directly return to the place where he left from? Yes, but my yes hinges on that adverb, Your Honor, directly. So the affidavit clearly states that he went to the deal and then I think it's the very next paragraph, he is at the home being observed directly by law enforcement loading a child into the same Jeep that he just sold cocaine out of. So that puts him back at the house. I understand there isn't the bridge sentence of and he went back home, but that is obvious to any charitable reader that, yes, he now is back at the house. I guess we're charitable in some ways. Would you say that's an extension of our precedent? Is there a case kind of on all fours with that? No, Your Honor, and I apologize. I used the term charitable just because. I mean, we do, especially with good faith, for example, I guess that would be charitable. Well, in your own opinion for the court on Monk and Sanders, you talked about the importance of not engaging in a begrudging reading of an affidavit. In that case, I think it was back and forth, right? Well, so the first buy in Sanders. There are two buys. There are two buys. I remember the case. Yeah, so the first one they only saw the person return. The second one was to and back, right? There was at least one of those was to and back. I had done that the second one they saw the defendant leave the apartment, get into his Chrysler, and drive immediately to the buy location. So there's the first buy has him going directly from the house and the second buy has him going back to the location. So I think that Sanders shows why there's probable cause here. I understand that Judge Neff felt that this was a thinner case, but she didn't mean thin in the sense of it doesn't rise above the probable cause bar. She just meant like, hey, this is a quantum of facts that crosses the probable cause threshold, but not by much. But close counts here. I mean, we are not required to have. Close counts under the good faith exception too, doesn't it? It does. And that is an independently sufficient basis upon which this court could affirm. That's the whole basis. If it's a close call, the good faith exception applies. That's exactly right, Your Honor. In Reed, this court spoke at length about how what we want police officers to do is ask judges about whether they have permission, and that's what they did here. And that could decide this issue. But I submit that there's probable cause largely in view of Sanders and Simmons. So in Sanders we have a tip plus two CI buys. You know, these nexus cases, we've got cases kind of all over the place. I mean, they're all fact dependent. But anyway. Yeah, and I understand that was part of your concern in Sanders as well. But there is a case where we have a specific nexus. We could sit here and imagine stronger cases in which we do see inside the defendant's house, or there's a ten-month-long investigation. But all the law requires is a specific connection, and here we do have a specific connection between one confirmed drug deal. A sufficient connection. Yeah, it's got to be specific, but also sufficient. And I submit that it is here because we have the defendant traveling from the place to be searched, going and distributing drugs, and then he's directly seen by an officer traveling and engaging in this other suspicious transaction. Okay. Should we require that they actually see him enter the house and come out of the house, or is it sufficient that he's on the premises? This court has never required entry into the house. In Berry, 565F3rd at 339, which was cited in Reed, that's a case in which this court affirmed there was a nexus where there were just drugs in a dealer's car that were placed outside a home. That was enough to get inside and search it. So this court hasn't ever required a sentence in an affidavit about whether or not a door has been opened or closed by the defendant in order to find there to be probable cause to search that same residence. Thank you for your time, Your Honor. All right, thank you. All right, rebuttal. Good morning. I'll start with the proffer agreement issue. First of all, I'd just like to point out that the conversation between defense counsel and the district court ended with counsel stating that he was going to object on a case-by-case basis. So I understand that there might be some statements going one way, some statements going the other, but as this court recognized in United States v. Mabee, if there's any ambiguity as to whether or not this issue has been waived, it gets resolved in favor of reviewing it on appeal for plain error. So even if the court does find it's kind of ambiguous because of other prior statements that counsel made, that last statement where he indicates he's going to object on a case-by-case basis should warrant review for plain error on that issue. In the record that explains, and there may not be and you shouldn't disclose any client conferences, is there anything in the record that explains why the case didn't settle? I believe the plea offer was never given to Mr. Walker. That's my understanding. I believe that at the final pretrial conference, the prosecution expressed to the judge that a plea offer had not been tendered to the defendant, and I believe that that's how it ended up at the time. So he was essentially forced to go to trial with this. You asked my friend on the other side if the defendant can make any argument or any defense, essentially, and I think that as the court in Grogan and Roseman recognized that a defense that the defendant should be permitted to make is that the evidence was just not sufficient to convict him, and I understand that the prosecution brought up this buy-or-sell relationship, but as the court in Roseman recognized, even disputing whether the government can prove a specific element, that's not sufficient to warrant the entry of all of these proffered statements, and so disputing whether this was a buy-or-seller or a conspiracy and if the evidence was going to show one of those, that goes to a specific element of the crime that has been charged. If there are no other questions on the proffer issue, I'll switch to the Fourth Amendment issue now. So you were correct, Judge Radler, that in Sanders there was before and after travel from one of the drug deals, and I think that that is extremely important. While this court is permitted to draw reasonable inferences, the court in law explained that it cannot draw inference upon inference upon inference in order to reach the probable cause bar, and even though this court has found that where a defendant leaves a home, drives to a drug deal, and then returns and immediately goes inside, that might be enough. That inference is reasonable because of that direct connection to the home, and here we're missing that, and it would require the court to make several additional inferences that are not supported by the information included in the affidavit, and so it would be improper to find that it was supported by probable cause and unreasonable for an officer to rely on it. Okay. Any further questions, Judge Lawson, Judge Radler? All right. I again want to thank the University of Michigan Appellate Litigation Clinic for accepting this case under the Criminal Justice Act, and thank Ms. Poe and Clary for your excellent arguments today. Thank you. The case will be submitted.